Number 21-1287. Okay. Thank you. Welcome Council. We're glad to see you this morning. We're sorry. We can't do this live, but we're happy to see you via zoom. Do we have judge matey? Yeah, he's there. Is he okay. All right. I don't see him on my little panel up top, but. All right. Great. Great to see it. Okay. The next case is. Berkley Specialty Insurance versus Masterforce Construction Corp Number 21-1287. And just before we start our arguments. We will be timing. I will be timing. I suggest you do the same. I will ask counsel for the appellants. To be reserving any time. Counsel for the appellants has two people on their side. So. I would just note that. You've got times that you've allotted for yourselves. And I, again, I would keep time on your own. Don't rely on me, but I will let you know when time is up. I'll ask counsel for the appellants. Will there, will either of you be reserving any time? Good morning. I'll be reserving three minutes for rebuttal. Okay, great. That will be good. And good morning judge. This fellow burger. If I'm only have five minutes, but if I go less than the five minutes, we will certainly agree that we will transfer our extra time to, to appellants council. Okay. Well, all right. We'll see about that, but. Okay, great. All right. So Mr. Angler, you have seven minutes. You're dealing with right now. Okay. If my math is right and I'm not a math major. So. All right. Well, you may proceed. May it please the court. This case concerns property damages to the Brant's home. And which property damage should have been indemnified under the Berkley policy. The first and second are really the same. Given the evolution of Pennsylvania law. The issue really is whether or not the damage. To the third person's property. Impacts. Whether or not it comes within the definition of. And if the number of cases that are binding on us is not just a result of. Occurrence. And that goes back to. Yeah, Gambon and. Turner versus some of the later cases. But that. The same inquiry. If the later cases. Are binding. Well, let me bind on us, but if we agree with the later cases. And I wanted to ask why the district court didn't even really get into an analysis of intellects or. The Pennsylvania Supreme court. Or Pennsylvania manufacturing. Simply relied upon our decision in specialty services and Gambon. The Pennsylvania Supreme court. Again, bone, which we kind of. Brought into our analysis. But, but isn't that the same thing? If we conclude that under Pennsylvania law. Damage to third. Person's property. Can still fit within the meaning of occurrence. Even if the damage. Results from faulty workmanship. These have the. The converter holdings. Then you seem to be, you've gotten the currents. But if we conclude that the later Pennsylvania spirit court cases. Hold sway. Then. And I might have the backwards. Then you don't. I've got the backwards. So I'm wondering if the definition of occurrence includes damage to third person's property. That's one thing. If it doesn't include that. Then we're back in governor land. That seems to me that we don't have an occurrence here. Yes, judge. I think it's important to break them apart. Primarily because the district court aired and making a finding that the first case was the second case. In which case the damage or nearly all of the damage was to the product itself. It's difficult to portray that in briefing and text. So I've prepared a simplistic demonstrative, which is this, this being the brats house. It was complete when master force showed up. Did you make those out of Legos by any chance? It's actually a bird house. Okay. It's a bird house. So, but it, but it works for craftsmanship. To show the purpose. They had a complete house. They had a complete roof. The only product that was installed. For metal panels that were brought in and put over the preexisting wooden roof. This is the product that was installed. These metal panels, the roof and the wood and everything else was preexisting. The metal panels were not damaged in the water or in the. By water. All of the damage was to the preexisting wood structures. So the product that was installed is distinct from the. The underlying damage though. So the converter metals case. Doesn't control the outcome. To the extent that converter. To the property. I'm not sure if I either, because the damage to the property, the property was damaged. It's still a third party properties. The Brents. We're not in privy of contract with the insurance company. Correct. It is the branch property that was damaged, but it was not the property that was installed by the insured. I think that's the distinction that's made in, in governor and its progeny. Those cases dealt with. Damages to the work that was performed to the product that was installed. And that's not this particular case. That would make a difference because the focus there, it seemed to me. They were concerned about not having an insurance policy. Become a performance bond. And that's why they looked at whether or not the problem resulted from the workmanship. Here. Is the issue of the workmanship of the product that's because that's really not any of the focus here. It's not whether or not. The workmanship was defective. That seems to me that was the common peace court would have gotten into that. The issue is simply the damage to the property. Not of the insured. But of the, of the brands. Correct. It is the brands property. It's a property that's a property that's a property that's a property   That's a property. And under the two cases that, that are most controlling, which are the superior court cases, Indolex, and Pottstown. Indolex held that where there's a bad product installed or where that product malfunctions. That's sufficient for tuity to constitute an occurrence for a tort place. Tort based claim for damages to other property. That's what I'm trying to focus on. I'm trying to. The other property. Yes. And the other property would be the, all of the wood structures that had to be repaired because of the water damage. The branch brought negligence claims in the state court found that master force installed a defective roof, that the roof was defective because of the slope and then it caused damages. I mean, the state court made a specific finding. It's a page two 52 of the appendix that the defendants sold and installed a roof on plaintiff's property. That was inappropriate due to the slope. So under Indolex, the damage arose from an occurrence because the brands were sold. Very interesting argument. I had not looked at it that way, but you're looking at other property in a way is different. From the way I had been looking at it. I think it's probably different from the way intellects in Pennsylvania manufacturing. But that's not to say it's invalid, but that's. It's an argument. I had not looked at it through that lens before. And in. Pennsylvania manufacturing, or if, if I refer to it as Pottstown, it's the same case. Which is a more recent holding. The occurrence that was at issue there is nearly identical to what happened here. And the occurrence language is also identical to the policy that Berkeley issued. In Pennsylvania manufacturing. The court found that water damage to other property was caused by flooding from four rainstorms. That occurred. Between. July 13th and I believe June, 2016. And it was the flooding from those storms, those distinct events that provided the fortuity necessary for it to be considered an occurrence. And that's nearly identical to what happened here, but the metal panels did not leak all of the time. There were only a handful of leaks in January, 2013. January, 2014. And January, 2018. And in Pennsylvania manufacturing, the court held specifically, the underlying action alleges damages to other property. Caused by a distinct event, which was flooding. And the damage to. Was compensated was for the damage to the other property, not for the cost of replacing or repairing the defective item that the insurance applied, which was the roof. The occurrence was based. That the on the flooding. And in the case of the Brant's case, which is a very significant. Event of the, of the rains coming through. And that's exactly what happened here in the Brant's case. The significant rain and snow storms resulted in. The trial court in the state court found that it was literally raining in the Brant's house. So it is nearly identical to what happened. In Pennsylvania manufacturing, which the district court disregarded and did not. Address now. So. Is there any. You're at seven minutes. Just so you know. Is there any issue here about whether or not the problem arose from the workmanship as opposed to the materials. Was the workmanship or was it both? Or does it matter? I, at the end of the day, I don't think it matters because the roof was defective from the outset. And the problem. I think is that. They were sold a bad product from the beginning. Now there is also. You saying that's different from your, your. You know, the birdhouse there. Because I thought what you're saying from the, with the birdhouse illustration, which is helpful. And I thank you for it. It's not that they had a bad product from the beginning, but they had this roof, which was in fact. The roof was in fact, the roof was in fact a defect and okay. But what was done to the roof. By Wilton or whatever his name was the guy who the roofing company brought in. Basically made the roof. Just functional or defective. But I'm trying to find out if that was because of the way the things were applied, where the materials were defective themselves as opposed to the underlying roof being defective. Yeah. And that's where this gets a little complicated judgment. If I may respond past time. Yeah, go ahead. The issue in the birdhouse makes this worse because the slope is, is, is. Less steep than. Okay. But there were different types of metal panels that could have been installed. The one that master force chose to install was not appropriate for that type of workmanship. That's interesting. If that's true, and that's borne out by the. By the record. And that's the finding of the common peace court. Then we're not even in Cabrera land to begin with. You're saying, because we don't have an issue of. Defective workmanship. Just off the table. Yes. Okay. Okay. Do we need to revisit any of our past decisions? I mean, the briefing covered. I don't think you do judge because the cases that were, were listed in Pottstown dealt with. Underlying incidents where it was damaged to the original work or work that was performed by another contractor on the same job, not the other property of. The property owner. So. I don't think we need to revisit any of our past decisions, but I do think that. Specialty surface is dealt with. The, the, the work from the contractor who was being sued that resulted in damage to another. Part of the. To the damage of a subcontractors work. Not the original underlying property. And that case only involved claims for contract here. We have tort based claims that I think distinguish. Okay. Okay. I, you know, I still may be scratching my head a little bit on the difference between, I mean, I looked on paid. Appendix page two 41 in the that's the state court findings of fact. And that says that. The, the, the, the, the, the, the, the, the, the, the, the, the, the, the master force was contracted to install a quote. Standing seam, 24. Gauge metal. Metal colored Brown roof. And you're trying to push it into another box, which is it's just metal panels. I don't know what the significance is there. I, I appreciate your birdhouse as well. It was a useful. But isn't it's we're talking about metal panels, not the entire roof. Correct judge. And if, if you, if the, the opinion goes further, and most of the damages are to replace wood. And some of the arguments that were made was that, you know, that the, the wood should have been replaced when, when the, the, the panels were installed, but it was not. The district, the state court disregarded those claims that were advanced by the defendants below. But the idea is. The issue with the performance bond. The only that that which. The issue with the performance bond that the governor raised was that the. Product that was installed would be essentially replaced for free. And that's, that's not the issue. What the damages here are as to everything that was under that, which was installed. Only the metal panels were installed by master. Okay. Do my colleagues have any other questions? I have none. Thank you. Okay, great. Okay. Let's hear from Mr. Berger. Thank you. May it please the court. My name is Philip Berger. I represent master force construction corporation. Master for agrees and reiterates the arguments set forth in its file brief, and also by the brand of pounds council today. Master force believes the district court committed an abuse of discretion. By ignoring the current app appellate case law and. Predicting what Pennsylvania Supreme court would do and also committed an error of law and finding that there was no occurrence under the policy. I'll be very brave. You're saying council that we do need to revisit our jurisprudence. I think that the jurisprudence that has occurred since coverner. Is what the jurisprudence is in this commonwealth. It is in the commonwealth. And I think that the district court's decision to just ignore all the opinion since coverner. Is problematic. And I'll go through that right now, your honor. I have. We're going to have to revisit our own jurisprudence then that made a prediction that you're saying is, is inaccurate. Correct. Your honor. I think that's, I think that's the case. And I'll do it very quickly. Indelex I think is the case that the intellect is the case, which it was reviewed by the, by. The court and summarily dismissed by the district court, but it's absolutely appropriate to this matter. It was issued seven years after coverner. It continues to be cited and relied upon by the Pennsylvania appellate courts. And it is the case that was reviewed and relied upon by the trial court in the area insurance versus master force matter, which is the corresponding action. Which was just found by the president judge of Clinton County in February of 2021. Under intellects that there was an occurrence. And for the district court to predict the Pennsylvania supreme court is going to go against all of the subsequent case law that has happened since the governor opinion. I think is pretty presumptuous and abuse of discretion. The facts are that the metal roof that was installed was not due to a defective installation. It was a malfunctioning roof. Not intended for the brand's house, not a defective installation. This brings this case within the scope. And the product liability sphere of intellects. It is different than the Gambon decision. The Gambon decision was, which was reviewed and was based on faulty workmanship and the application of the correct finish. This is not that case. This is the wrong defective route being installed resulting in property loss to a third party. There was an occurrence under the policy and Berkeley had a duty to cover that. Secondly. It would, even if it was an accident based on negligence, it's still covered as a defined occurrence. An accident requires an unexpected event and implies a degree of fortuity, a chance occurrence that's under the governor opinion. But as the trial court. As the trial court found that there was negligence by installing the wrong roof. All damages to the third party brands. Stemming from that negligence is still covered by the insurance policy. And I re recite the Donald goal, Pennsylvania, Supreme court opinion. And in Donna gold, the Pennsylvania Supreme court. Found that property damage. Allegedly caused by negligent acts of the insured. Maybe a fortuitous chance occurrence event. To constitute an accident. And thus an occurrence under the terms of the policy. So even looking at that Pennsylvania Supreme court case. There was an occurrence, even if you found, even with the negligence. And even we'll go one step further that even if a third party's conduct is intentional. It's still may be deemed an occurrence under the policy under Pennsylvania case law. If the conduct of the subcontractor Wilton. Was intentional. And if such conduct was enabled by the negligence of master force, which was the insured that conduct may still be deemed an occurrence under the policy pursuant to the Piper case. Which was the third circuit case and which was quoting the moan versus American casualty company of reading case. So under the Donald goal opinion, the Piper and the moan decision. For the district court to simply find there was no occurrence and thus no coverage. We believe it was an error of law. My third and final argument. Is that the brand appellants had alleged tort claims in their underlying action. The trial court then entered judgment on the brands. Tort claims. As the entered judgment was found upon tort law. This action falls outside the converter case. Because the converter case is specific to a breach of contract action and to a breach of warranty action. Again, intellects is the proper opinion as it relates to the tort claim, which resulted in the property loss to the third parties being the brands. Intellects found that with the tort claim, there is an occurrence under the policy. And accordingly, since this was a tort action, the district court's reliance on the converter breach of contract case to determine that there was no occurrence. Is just wrong. And it was an error of law. Thank you. Thank you counsel. Do my colleagues have any questions? Well, you know, this. I can toss this, I guess, to everybody. There's an issue here, which we may have to address. In terms of our own institutional decision-making. Clearly, as you know, a panel of this court. Cannot overrule. A prior decision of a panel in a presidential case. And in this case. The issue of the extent to which a district court is bound by a presidential decision. Of our court. We're subsequent decisions subsequent to the. Third circuit opinion. May well call into question that prior panels, presidential decision. It's not super clear. And I've looked at. Earl probably is the place. With the language that comes closest. I'm not sure. I'm not sure. It's not crystal clear. Whether or not a subsequent panel. Can we rely upon. Cases of an intermediate state court that came after the prior third circuit case. To overturn. Or read. Revisit that prior to the circuit opinion. This raises the issue of the extent to which a district court. Has to be bound by. A prior presidential decision of this court. Even though there've been subsequent decisions, not of the state's highest court, but an intermediate appellate court. That may call into question our prior panels decisions. I don't know the answer to that question. And maybe we can avoid it here. I'd love to avoid it, frankly. But. It seems to me that's what happened here. The district. The district court didn't necessarily. Conclude that it was bound by this. Didn't say in its opinion. It was bound by our decision in specialty services. But it really did not address intellects. It didn't really address Pennsylvania superior. And it really didn't even look at governor, because if you look at governor carefully in governor, when the Pennsylvania Supreme court began examining decisions from other state appellate courts. They did mention with some significance, the fact that those prior courts. Did not consider whether or not the damage was to third. Person's property or third property. And they did not consider whether or not the damage was to the property. Property other than the insured property. Which to me. The district court had to address that. Before. Simply relying automatically on specialty services. Including that intellects. And Pennsylvania. Manufacturing or pot sound as you're calling it. Does not control. And I can ask this, I guess. I don't know if that's more of a stream of consciousness than a question. I guess, but I wanted to show you that part of the, the concern of that. And what's troubling me. And I follow up on judge McKee's questions and Mr. Berger. I had the same concern he did. And I just wanted to get your take on specialty services. Do you understand specialty services? To involve only damage to the insureds. Owned work product or to a third party's problem. Hey, the way that I viewed. The district court's opinion is that he didn't, the, the, the. The court did not make a distinction between own property and third party property. I don't think. I think that specialty services you thought is that specialty services you thought, but that was something other than the. Then damaged to the insurance. Owned work product. Well, I said what. I guess my point was that the district court. The district. Court did not make that distinction. And I think that there is a distinction based on the case law, on all the subsequent case law. That when it applies to third party property that gets harmed. That they find an occurrence. Typically they find an occurrence. And that. The, that it was an error of law, not to find that there was an occurrence, especially because it was to third party property that was harmed. I thought, thank you. Thank you. Could you answer judge McKee's query about. Can we even, are we even able to revisit? I don't want to paraphrase wrongly with judge McKee said, but are we even empowered to revisit a prior panel decision? In this case. Is that, is that. I'm sorry. Is that directed to me? Yep. Okay. Thank you, your honor. Thank you. Thank you, your honor. I think that, I think that. There is. When you had the. I think there's just an abuse of, of discretion in this case when you just ignore all of the subsequent case law that occurred. And when the, when the reviewing this matter, just ignoring the case law and saying, I am going to presume what the Supreme court is going to do in the future. And I'm not looking. And I'm just summarily dismissing the intellects case. I think that. That all of that case law that has developed. And which is what's the appellate courts have been finding in this case. I think it's presumptuous. I think it's presumptuous for the court to find that it can dismiss that action. And it can just presume what the, what the Supreme court is going to, and I think that was the basis of the opinion. Maybe we're talking past each other. I think we understand that. I think what judge McKee was getting at. What my question is. Is that we, we have, we've just, we've, we've spoken in this area before. Perhaps the rather than being presumptuous, as you say, Perhaps the district court was just trying to do its job and saying there's binding third circuit law out there. I've got to follow that. And right now. We stand in a spot where we say, all right, well, now we're the third circuit, but can we revisit. Can we revisit what we've said before without saying on bonk or something else? I'm posing to you. I mean, it's a complicated question. It is a complicated question. I guess my response to that is I think this court needs to take that position. I think this court can't just say that, well, we have to rely. We have to continue down the wrong path because of prior panel. Potentially found wrong. And when you have this, when you have this district court, determining that. That. He is going to make a determination as to what the Pennsylvania Supreme court says. I just think that that's just a wrong position and that the panel, this panel has to review that other panel with all of the subsequent case law that has come out. Stating that, especially when it's damaged to a third party. To a third party, that all of the cases that have been found by the appellate courts to be. In Pennsylvania. And the state after it. The K after the issue. Has found that there is an occurrence. So I think it's necessary to find there because otherwise we're just going to continue to have this. Diametrically opposed. Positions. As to what the case law is in Pennsylvania. All right. Well, I, nobody asked for this, but is this the kind of case that you think should be certified to the Pennsylvania Supreme court? We don't do that lightly, but is this the case that we do it in? I think that's more of an opinion for Mr. Engler for Mr. Engler to, to answer. I think that, I think the case should be remanded back to the district court. And, and if necessary, then, then proceed. But I think the case. Is going to be in the same quandary that we would be in. And that is what authority does the district court have. To not be bound by and to go. Down a different path than our 2010 case. Yeah, but I think, I think, I think judge McKay, that. The district court. Didn't really look to those other cases. The district court. I agree. So I think that, I think that it needs to be remanded for the district court. To review all those other cases and to review. How this case stacks up to all of the. Yeah. My point is, and it's what chief judge. We have a quandary here as to whether or not we can be examined. Especially these services, given the intervening law. The district court, even more of a model and. It raises the issue of whether or not it, and I hate to. Suggest. I'm going to take five seconds to explain to you why you're wrong. So. I'm bonked in a diversity case. In fact, years ago. I voted on bank. A diversity matter at Becker called me up and he said, Ted. You got five minutes to explain to me why in the world of federal corporate one on bank, a matter of state law under diversity jurisdiction. Then I'm going to take five seconds to explain to you why you're wrong. So. So judge McKee, I think under your, you know, and this also goes back to the prior question that was asked to me. This may be big because we are dealing with two diametrically opposed opinions on this same case. With what the Pennsylvania. Courts found and what the federal courts found, which are diametrically opposed. Maybe this is the case to, to, to move up. To the Pennsylvania Supreme court, because. I think the question is, is that if we have a case where the Pennsylvania Supreme court is saying, even if it's a case that the Pennsylvania Supreme court is saying, even if the Pennsylvania appellate court finds that Erie has a duty. And then this court finds that Berkeley does not have a duty. Or I'm just a really crazy things. If it switches with the Pennsylvania superior court comes back and says, Erie does not have a duty, but this appellate court says, Berkeley does have a duty. We're still in a quandary where we have. We have. A totally divergent opinions between two courts as to what Pennsylvania law States. So maybe this is the case to bring up to the, to, to move up. All right. Well, thank you, counsel. We're we're over time. If judge, can I. Sure. One last question. I just, so I understand it because I, I had thought your argument. Was. That the district court. Error. In applying specialty services to facts. That were not present in specialty services and thereby disregarding. The more applicable holdings of the Commonwealth courts, because I understand that there is language in specialty services. That could be understood. To not make this distinction between damage to the product and damage to third parties. But my understanding is specialty services. Only involve damage to the product itself. If that's the case, then is it still your position that we are in a quandary that specialty services. Binds us in a way that triggers these jurisprudential and hierarchical questions regarding stare decisis and precedent, or is it just a different case on the facts, the kind of thing that we would assume that courts would ordinarily factor into their decision as to how much weight it is given. I think it's different facts on, on the, on this matter. And I don't think that district court took the facts into account when they, when they summarily dismissed the other appellate case law. So I think it actually is different facts here. And that's why I said, I think it can be remanded. Back to the district court to review the applicable case law as it relates to these facts. And as it relates to third party harm based on this, Or because of the issue of disparate opinions that it should then be moved up so that there could be a final determination as to whether harm to a third party based on a tort claim is, is an occurrence under Pennsylvania law for insurance policies. Very helpful. Thank you. Thank you. Thank you. All right. Well, here, we'll hear from Mr. Yeah, I'm probably mispronouncing your name, but we'll hear from counsel for the pill. Thank you, Your Honor. It's Tony Mishiosha for Berkeley specialty insurance company. That's okay. Even though you've explained to me how to pronounce it, I'm going to stick with counsel for happily. That's fine. And now with me off camera is my associate, Mary Ann Bradley, who's on the papers. But what I'd like to do in addition to responding to some of the questions your honors just posed to appellants council. I wanted to focus on two main issues. First, what role or standing if any does master force have in this appeal, given that it did not file any notice of appeal and filed a belated brief. And still to this day has not filed any motion or anything along the lines of a notice of appeal. And secondly address what judge McKee and all of you have focused on, which is where any of the damages awarded in the underlying verdict awarded because of damages that were actually caused by an occurrence and by saying actually caused, I want us to focus on the fact that this is not a duty to defend case. Berkeley issued two policies. It defended it's insured under a reservation of rights. The underlying case went to verdict. There was an appeal. The appeal in the underlying case is over. We're not discussing whether or not there's a continuing duty to defend. We're not talking about whether we get reimbursement of defense costs. The only issue before this court is whether based upon the legal and factual findings in the underlying case, as compared to the terms of the Berkeley policy, whether there's any duty to indemnify that award. And the answer to that is a clear no, and it does not require this court to re-examine or revisit any of its prior decisions. First I want to address some of the questions and I think some of the, the misperceptions that may be out there first. There's been several statements that the case before this court is that Erie filed against it's separate insured Wilton. That's pending now before the Pennsylvania superior court, the cases are not the same. Although Wilton was a defendant in this case and is a defendant listed on the same verdict that we are talking about today. It has a different policy and the court can take judicial notice of Mr. Englert's brief filed in Pennsylvania superior court, where he argues that collateral stopple should not apply in that case such that the court in that case applies the reasoning in this decision. And the reason that Mr. Englert says that is because this case and the one pending before the Pennsylvania superior court involve quote, two completely different actions involving completely different insurance policies and coverage. What does that mean? Well, I want to talk for a moment about one of the decisions that's not been talked about. And one of the decisions that I think Demonstrates why this court need not revisit prior law. The third circuit issued a decision in Sapa extrusions in 2019. That decision was issued after coverner after gum bone after intellects. And I believe it was also issued after Pottstown. So the most recent Supreme court pronouncement on these issues was issued after all of those cases. And what Sapa found as relevant to this case were several things. First in Sapa, the court looked at several different insurance policies. It actually looked at 28 different insurance policies and the court broke them down into three types of policies. The first policy is similar to the one that's before this court, which is a policy that provides coverage for damages because of property damage caused by an occurrence where the term occurrence is defined as an accident. And that's what I'm going to focus on today. What the Pennsylvania superior court in the Erie action is deciding is what does a policy under the second definition that was addressed in Sapa mean what the Sapa court referred to as the expected intended definition, the policy in that category in Sapa, similar to the policy that Erie issued to Wilton defines the term occurrence, not just as an accident, but includes additional language in the definition that says that it results in bodily injury or property damage, neither expected nor intended from the standpoint of the insured. The distinction is that the policy, the Berkeley policy at issue has the objective standard, the standard language that was construed in Coverner and Gambone. The Berkeley policy does not have the subjective language that the Erie court is considering in the superior court action or that the intellects court addressed in its position. And one of the significance of that is that there's much discussions in the briefs about whether the insured expected or intended to harm, whether our expected or intended injury exclusion applies. That's not what this case is about. We're talking about the concept of fortuity that both Mr. Engler and Mr. Berger referenced and a concept which I think judge McKee noted when Mr. Engler talked about what he thought were his three issues. The first two issues are really just, is there fortuity, whether or not there is damage to the insurance product or some consequential damages is irrelevant to the question of fortuity, whether or not there are claims or causes of action for negligence or breach of contract are largely irrelevant to the question of fortuity. That's what Pops down says. You don't focus on the label. You focus on the facts. The big difference here, however, is that the facts that are relevant are not the alleged facts, the potential for coverage, but rather what is it that the underlying court found and what the court found. And this is from a record page two 45 and two 46, a couple of pages after where judge cigars was talking about in terms of the findings of fact, the court found that the roof was improperly installed and should never have been installed on this building due to the slope of the roof. The court also found that master force and the other defendants acted in concert and conspired to deceive and defraud plaintiffs by intentional actions and inactions, which included a purposeful manipulation of the many defendants to obscure who was the actual party to the contract, the actual party doing the work and the actual party responsible for the warranty. There was discussion earlier today by appellants council that this was a bad product. That's intellects intellects talks about a tort case, a product liability case where there is an act active malfunction of a product. There is no active malfunction here. And again, it's not what's alleged in the complaint or what's possible. There's no finding of any active malfunction. This is a faulty installation case and really just deceptive fraudulent conduct in hiding. Who's really doing the work and misrepresenting who's standing behind the conduct. That's not really relevant to the policy that may go to the damage issue, but that doesn't really enter into the whole issue. The primary issue here in terms of whether or not we have an occurrence, whether or not we have an occurrence. So it depends on an accident, which under this version of the policy language is not dependent on the insured's expectation or intent. It's based upon fortuity. And what the courts have have held is that faulty workmanship. And this is under the coverner case, which is the Pennsylvania Supreme court faulty workmanship does not constitute an occurrence. What the Gambone court held, Pennsylvania superior court is that faulty workmanship that leads to consequential damages caused by natural and reasonably foreseeable damages also are not caused by an occurrence. What are those damages? They were where the building exterior was a sieve, the building envelope, the stucco was a sieve and allowed water infiltration, damaging other non-defective portions of the building and getting to the interior. That's the situation here. There is no accident. There is no fortuity. Pottstown was more akin to a premises liability case. Although the person was doing work on the roof and that damaged the products that were stored inside the insured was not a contractor. He'd like here. The insured was somebody who was renting out warehouse space and somebody had stored their products inside the warehouse and the warehouse again, didn't keep out the elements and it damaged the property inside. It's more akin to a premises liability case. It's not a faulty installation case or faulty workmanship case. The insured in Pottstown was not doing any installation or construction work for the third party claimant. Like we have here. Judge Mady asked about specialty services and to what extent that may be controlling. I think it is controlling, not withstanding the later decision in Pottstown and intellects. Again, that case involved issues with faulty installation. It wasn't a product liability, active malfunction case like intellects. It wasn't a premises liability type case like Pottstown. And also, it did involve damage and alleged damage to things more than the insured product. The insured in that case, Empire was a subcontractor that was working on a part of the project and it was installing synthetic turfs in a drainage system. That system was inadequate. It was faulty. And it led to problems with depressions in the field, unstable playing services, damage to the, the underlying layers sort of like we have here with the roof and the court and specialty services following converter, which again, is still the leading Pennsylvania Supreme court case. And there's no Pennsylvania Supreme court case that changes it. There's no, and there can't be any subsequent Pennsylvania superior court case that   In those cases, we followed coverner and gambone and the fortuity content. Comments in those cases and said. That the natural foreseeable acts such as rainfall. Which tend to exacerbate the damage effect or consequences. Cause ab initio by faulty workmanship. Also cannot be considered sufficiently fortuitous. To constitute an occurrence. That's the issue that we have here. And again, to the extent that the court was worried about, do we have to revisit? Because Pottstown came after specialty services. The court again, address this in Sapa. Which was after Pottstown was after intellects. Lastly, there was some discussion. I don't know if I'm running out of time about whether the district court in our case. Was abused its discretion by supposedly ignoring. The subsequent case law. The court didn't ignore anything. In its decision. And in the case of 515 F sub third. From 2 93 to 2 94. And the text that goes along with a footnote 67. Through 70. The court is discussing Pottstown. And intellects. It certainly didn't ignore them. The council says they didn't talk about them enough. That's a different issue. They didn't. The court certainly didn't abuse its discretion and ignore those decisions. Instead, the court did what it should, which said. It's not bound by decisions of the Pennsylvania superior court. It is bound by third circuit law. It is bound by the Pennsylvania Supreme court decision. In converter. It needs to find a fortuitous loss. And there was no fortuitous loss in the case. So. The court simply did not abuse its discretion. In doing that. What I'd like to do. I can go on to other topics unless the court has questions. I'd like to answer those. Or I'll go into some other aspects of my brief. Well, one thing is your, your adversaries. Started off with. Talking about the distinction between the roof. And in the metal panels. Is this something we need to get into? Is this something that needs. That's critical here. No, because again, the case law makes clear. And this is SAPA again, after Pottstown and after intellects. And SAPA says, quote, any distinction between damage to the insured. Work product alone. Versus damage to other property. Is irrelevant. So long as both foreseeably flow from the faulty workmanship. And again, this case is different than some of the other ones. It's water intrusion. From a faulty roof and actually just an improper roof. They put on the wrong roof. What basically appellants are arguing here. Is that we all should become roofers. And we can put the wrong roof on a house. Purchase CGL coverage. And then that's an accident. They didn't put the wrong roof on because they grabbed. The wrong material or made some sort of a negligent mistake. They did everything they intended to do. And they acted intentionally and therefore it's not fortuitous. I'm going to briefly touch upon. I'm going to briefly touch upon. It's faulty work. It's faulty insulation. And it's, it's not just a claim. Again, that's what the underlying. Findings of fact hold. They don't say it's a product liability case with an active malfunction. They're not saying that, that the roof somehow. You know, Buckled under the heat and creating gaps that allow the water in. It's it's that they use the wrong roofing system because of the slope of this house. Okay.  So I just want to add that. Council. You mentioned SAPA. Why. Why what relevance if any? Do you see. In. In what I understand to be the facts of both SAPA and specialty services, which do not involve damage. Anything other than the installed product. I think I understand you to be arguing it. It doesn't matter because the cases have said it doesn't matter. But why does, why does the fact that the facts that were before those courts. Took, took, took, it arose in a different posture, make a difference here. With all due respect, your honor. I do think in those cases, if you're looking at damage. To something else from the perspective of what is it that the insured in those cases did. There was damage to something other than the insured work slash product. In specialty services. The insured was a subcontractor that only worked on a portion of the layers of the synthetic turf. The entire integrated system. Ended up getting damaged. There was no longer an ability to use the field for its intended purpose. In SAPA. We don't have an installation case. We don't have a faulty work case SAPA. You had a window supplier and somebody who put, you know, the coding on the windows that were then given to Marvin. To sell to the, to the builders. And the issue there was that the coding started to flake off. And then that led to problems in the overall window system. It became incorporated and integrated into a bigger project or product. So I think there were things that were damaged in both SAPA and specialty. That went beyond. What was simply the short work or product. And again, the important to sit comments in SAPA and some of the other cases is it doesn't matter when you're looking at the occurrence. Issue. No, again, we're not talking about was there property damage. We're not talking about if you get through occurrence and through property damage and through the damage occurs during the policy period. So you've got a trigger of coverage. We're not looking at the, your work or the, your product exclusions or other exclusions in the policy. This is an example of a damage that is not. Relevant to a property. For some of those questions might become relevant. Was it just damaged to the insurance product? Is it just repair and replacement of the insurance product or something else? You don't get to that. If you don't have it fortuitous loss. I also want to emphasize that the, the main parts of the damage award in this case. Where the attorney's fees and the treble damages. Neither of those. Was awarded based upon any negligence claim. They're both awarded under the unfair trade practices act claim. Under the home improvement contract, a consumer protection act claim. And both of those. According to the court's findings. We're based upon intentional wrongdoing. By master force and the other defendants. And, you know, whether those acts might in some instances. Allow for something that's covered because you have property damage caused by an occurrence and maybe you have recklessness or something less than that. That's not the issue before this court. The issue here is this specific verdict and these specific factual findings. Do they amount to an occurrence? Under a policy like ours, which does not have the expected or intended language that some of the other policies addressed in SAPA or the policy in intellect. Or the policy in the Erie V. Wilton case. Okay. Counsel, do you have anything more? I guess two quick points again, to the extent that, you know, master force has asserted it. It's bad faith claims. You know, that should not be revived in any way by, by this court. It hasn't preserved them on appeal further. The district court's ruling was that, you know, there's, There's no unreasonable basis for denying coverage, given all of the case hall that we've discussed today. And second, The decision that was made by the court in our case was based on the occurrence issue. As I alluded to today, There are still other issues that would have to be examined. I don't think we should go back down. I think this case is consistent with dozens of cases that this court has decided. And in fact, in Pennsylvania, because of the language. You have policies that add resulting damage endorsements to provide coverage for these sorts of events. This is not that policy. The insured didn't purchase that coverage here. It didn't request that coverage here. So there's really no reason to go back down. There's clearly not an occurrence. And the concept of fortuity is really at the, at the heart of insurance coverage case law and insurance policies. Judge cigars. I was before you a while ago. About a year ago this time. And we talked about how. The insurance industry and the concept originated here in Philadelphia. With Ben Franklin and the concept of ensuring homeowners in Philadelphia against fortuitous fire losses caused by things like lightning strikes. It's not intended to be a performance bond. It's not intended to cover somebody for their intentional conduct. It doesn't cover you for putting the wrong roof because you gave the wrong advice as to what roof to use. This is just not that case. I know from the briefing, it seems complex. And there's a lot that's been discussed. But, but frankly, this is really a straightforward, simple no occurrence case. All right. Thank you counsel. Do, do my colleagues have any other questions? No question. I just want to thank him. I'm going to mangle his name. Mr. Ms. For introducing Ms. Bradley. I think I got that name. And so often we see these cases where. Some junior partner or associate. Laborers day in and day out. And they don't get any credit except from the eyes of the partner. The court doesn't even know they exist. So I just, that was an extra courtesy that I, that I appreciate them. I wish more attorneys would do it. You know, for me. Thank you, your honor. All right. We'll hear rebuttal. Thank you, your honor. There's one thing that. Appellants council agrees with. With counsel for appellees is that we don't believe that this case needs to go back down. To address the procedural issue or the, the precedential issue that was raised. I think judge maybe has, has, has. Has focused on the issue, which is. When you exercise your de novo review of this case and analyze specialty services, you'll see that the facts of this case are different. And it. I don't believe it's going to be necessary to overturn any, any preexisting precedent. This case is distinguished on, on its own facts. And certainly if the court feels as though. There is. Some insurmountable hurdle there. At that point. Certification to the, to the Pennsylvania Supreme court may be appropriate, but I don't believe it would be necessary once the analysis is done. And to address a few of the other points that have been raised. SAPA dealt with. A defective part of a window that became part of a larger system. And it was a defective part of a larger system. But most of the most recent case that, that. This court has issued an opinion on concerning these matters. It was one that wasn't selected for publication. It's the one that. Mr. Mr. When he was before you judge cigar is about a year ago and Nautilus insurance company versus 200 Christian street partners. It's the site for this third circuit is eight one nine federal appendix 87. And in that case, it was a, a duty to defend case. But the complaints that the court found that the complaint alleged the use of faulty materials and an active malfunction of the products, such as windows and moisture barriers, and that those constituted occurrences. So, so there are. Additional cases where this court has looked and said the law has changed. Since specialty services came out and, and there's significant discussion of intellects in that opinion. So I don't think that you're going to need to, to deal with the precedential issue. The last point that I want to make is, is on this reference to intentional conduct or the, the. Subjective nature of the policy. I think it's a distinction without a difference in that, that term is also referenced in the Nautilus cases. That's subjective language that appears in the definition of occurrence in, for instance, the Erie policy is in the Berkeley policy. It's in the property damage exclusion. Which says that it doesn't cover property damages that's expected or intended by the insured. So when read in combination with the insuring agreement, it is essentially the same definition. And concerning those exclusions. Should we get over all of the hurdles for occurrence and whatnot? There is the issue that was brought up about, well, these, these damages were awarded for something other than negligence. And they weren't, there were, that was the Hickman and UTP CPL were the vehicles to the, to the, to the, to the, to the, to the, to the,   there was a very clear distinction between the award, trouble damages and attorney's fees. But it was more than this hiding that the ball as to who was doing the work that the state court. Set forth at length. Multiple factors that went into the analysis. It wasn't simply the, the intentional conduct. In fact, the court specifically. Basis is the state court based its award on the fact that this was the wrong roof to install. It was a bad product to begin with. And on the other exclusions that are there, there's this punitive damages exclusion that's it's in the briefing. And I do want to draw the court's attention to the fact that. In Pennsylvania punitive damages or statutory HICPA damages are not punitive that they're deemed remedial or statutory. And the punitive damages exclusion. That's in the policy at issue doesn't apply. If they wanted to exclude statutory remedial damages, they could have, they could have done that.  And in fact, the state court in fact did later in the policy, they've excluded damages. That would be awardable under the telephone consumer protection act. That act provides for trouble damages and attorney's fees. And that, that additional exclusion would be surplus age if that they were supposed to just fall under the preexisting punitive damages. All right. Well, thank you counsel. My colleagues, do you have any questions you'd like to pose? None. Thank you. Nothing. Okay. Thank you. All right. We thank counsel for their. Excellent briefing and argument in this case. We'd like to ask counsel to. To have a transcript made of this proceeding. Today. We would ask that it be split equally. Between the appellants and the appellee. And you can work with the clerk to, to take care of that. Thank you. Thank you. Again, thank you for your excellent work. We'll take this case under advisement.